Matter of the Application of JULIA PERKINS, for a Rehearing on the Commitment of MARY MILLER, an Alleged Feeble-Minded Person.

(Supreme Court, Cortland Special Term, January, 1919.)

Statutes — " feeble-minded person " not entitled to a rehearing before a jury of question of fact as to competency — constitutional rights — State Charities Law (added by Laws of 1914, chap. 361), § 461.

Where one upon a hearing duly instituted, upon notice, under section 461 of the State Charities Law (added Laws of 1914, chap. 361) has been committed to a State custodial asylum as a " feeble-minded person " she is not entitled, as matter of right, to a rehearing before a jury of the question of fact arising upon her competency; the omission of the statute to provide such a form of remedy is not a denial of any constitutional right.

PETITION for a rehearing and for a jury trial in the matter of Mary Miller, an alleged feeble-minded person.

Elmer L. Thompson, for petitioner.

Albert Haskell, Jr., for superintendent of the poor, opposed.

DAVIS, J.   The superintendent of the poor of Cortland county pursuant to the authority conferred on him by section 461 of the State Charities Law, instituted a proceeding in County Court by petition, August 2, 1918, to commit Mary Miller, as a feeble-minded person, to the State Custodial Asylum for Feeble-Minded Women at Newark.   The alleged feeble-minded person was given notice of the hearing and on the return day she appeared by counsel and a day was agreed upon for trial.   On the day appointed, to wit, December 18, 1918, the parties appeared with counsel and a trial was had, in which the issue was contested as to whether or not the respondent was a feeble-minded person.   Expert and lay witnesses were called by both parties, the hearing continued for about two days, and at the close of the evidence the county judge made a decision, finding that she was feeble-minded, and an order was entered committing her to the State Custodial Asylum at Newark.

There is now presented to me the petition of the person with whom the alleged feeble-minded person resides, asking on her behalf for a rehearing and for a jury trial of the question of fact arising upon her competency.   This action has been taken not upon specified allegations of error on the hearing just had, but on the theory that she is entitled to such rehearing as a matter of right.

The statute authorizing the commitment of feeble-minded persons to a state institution upon the petition of a poor-law official, is comparatively new. By chapter 914 of the Laws of 1896, the state board of charities was given power to "exercise supervision over all aged, decrepit and feeble-minded persons who are not proper subjects for care and treatment in a hospital for the insane, but who, on application by themselves or by their relatives, or if without relatives, then by their friends or by legal guardians, seek to obtain admission into homes, retreats or other asylums which may be authorized under the provisions of this act to receive and administer to their necessities in a safe and humane manner." The board was also empowered to license such homes, and it was provided that any person, not a minor, might voluntarily enter into any such licensed institution upon filing an application supported by the affidavit of two reputable physicians certifying to the fact that the said applicant, though aged, decrepit or mentally feeble, was not insane. These provisions were continued in and further provisions added by the Consolidated Laws of 1909, being article 17 of the State Charities Law.

By this law also, the superintendent of the poor was authorized to commit to such asylum "such feeble-minded persons and idiots residing in their respective counties, who are indigent or inmates of county almshouses." State Charities Law, § 94. It will be observed that no method was provided by these statutes for any judicial determination of the status of such persons, but it was left to the voluntary application of the persons themselves or their relatives, or to the action of the superintendent of the poor in the case of poor persons, if they became charges of the state in such institutions.

By chapter 361 of the Laws of 1914, an amendment

was added to the State Charities Law, empowering any poor law official to make application to a judge of a court of record to determine the mental status of any alleged feeble-minded person, and if it appeared to the satisfaction of the court that the individual named in the application was feeble-minded, and that it was for the best interests of the individual and for the community, that he be committed to a public institution, the judge might commit such person to such institution, using a form of commitment to be prescribed by the state board of charities; and such person should then be detained until duly discharged by direction of the board of managers.

This was in the nature of new and progressive legislation becoming happily more common in recent years, · in which the state assumes a greater degree of responsibility toward its defective and unfortunate citizens, and the welfare of the community where such persons reside. The law was somewhat indefinite and incomplete at the time of its original enactment, and at the last session of the legislature it was further amended, a state commission for the care of feeble-minded was created, and given defined powers and duties, and a legal definition of a " feeble-minded person " given. Laws of 1918, chap. 197.

While the statute provided that: "Every application for commitment shall be accompanied by the certificate of two medical practitioners, certifying that the person to whom the application relates has been examined by each of them as to his mental capacity and that in their opinion the person is feeble-minded " (Laws of 1914, chap. 361), and the state board of charities was given authority to prescribe a form of commitment, no definite method of procedure in contested cases was provided in the statute; and it seems that the state board of charities not only has pre-

scribed a form of commitment, but has devised a form of petition, notice, certificate and order for use in the proceedings, somewhat analogous to that commonly provided by the state hospital commission in proceedings to determine the question of the insanity of an alleged insane person. This form was used in instituting the proceeding to determine whether or not Mary Miller was a feeble-minded person.

The learned county judge accepted the forms presented by the petitioner and adopted in a general way, in conducting the hearing, the procedure usually followed in lunacy cases. This was entirely proper as long as no particular method of procedure had been established by the legislature, and the forms provided by the state board of charities for instituting the proceeding, and the procedure he adopted on the trial, furnished a fair and orderly method of bringing before the court and of trying the issue of fact presented. It rested with the wise discretion of the presiding judge to accept the forms presented to him and to adopt the method of trial he thought best calculated to insure a proper hearing.

It is now urged by counsel for the petitioner herein that since the general procedure in lunacy cases was adopted, the provisions of the Insanity Law giving the alleged insane person a rehearing before a jury as a matter of right, must be applied here (Insanity Law, § 83); and he urges further that the alleged feeble-minded person is entitled to a jury trial as a constitutional right, particularly as there is no method provided in the statute of reviewing the decision of the county judge by appeal.

There is in this state no natural, inherent or vested right of appeal or review, except as it is given by the legislature in a definite manner by statute. *Butterfield* v. *Rudde,* 58 N. Y. 489; *Leake* v. *Hartman,* 137

App. Div. 451; *Leach* v. *Auwell*, 154 id. 170; *Terwilliger* v. *Browning, King & Co.*, 207 N. Y. 479; *John* v. *Paullin*, 231 U. S. 583.

The Constitution of the state provided by article 1, section 2: " The trial by jury in all cases in which it has been heretofore used shall remain inviolate forever; " and by section 6, that " No person shall be * * * deprived of life, liberty or property without due process of law."

In insanity cases, the alleged insane person is entitled to a trial of the question of fact, not only by the statute but as a constitutional right. Jurisdiction over lunacy cases was originally exercised by the court of chancery, and the custom prevailed on the part of the chancellor, before the Constitution was adopted, to require a trial by jury of the question of the insanity of a person, and therefore, that was one of the cases where jury trials were preserved by the Constitution. *Sporza* v. *German Savings Bank*, 192 N. Y. 8. But so far as I am able to discover, there was no jurisdiction ever exercised over the persons now classified as " feeble-minded " by any court prior to the act of 1914, except in certain instances their property might be conserved by the court by the appointment of a committee of their person and property if they were declared to be " incompetent persons." Code Civ. Pro. § 2320, *et seq.* The law originally recognized apparently no other classification of defectives than insane persons and idiots, and provided that such persons might be committed to state institutions. In recent years epileptics and feeble-minded persons have also received a classification, but we meet nowhere a legal definition of " a feeble-minded person " until we find it in the statute of 1918.

Therefore, before 1914 there was no jurisdiction in Chancery Court or in any other court, in cases of

feeble-minded persons, so that the section of the Constitution giving the right of trial by jury does not extend to such cases. It rests with the legislature to determine whether or not in such proceedings a jury trial shall be permitted, and the failure to provide such a form of remedy is not the denial of a constitutional right (*Duffy* v. *People,* 6 Hill, 75; *People ex rel. Presmeyer* v. *Commissioners of Police,* 59 N. Y. 92), and so long as such persons are given a forum in which the issue raised may be judicially determined, they are not deprived of their liberty without due process of law. *Wynehamer* v. *People,* 13 N. Y. 378, 425; *People ex rel. Witherbee* v. *Supervisors,* 70 id. 228.

As already stated, the responsibility for this class of persons is a new duty assumed by the state, and the jurisdiction in cases arising under the statute has only recently been conferred on the courts. Although the statute gives the right to a rehearing in insanity cases before a jury (Insanity Law, § 83), and also the same right to alleged epileptics who may be committed pursuant to section 109 of the State Charities Law, the statute is silent on the subject in case of feeble-minded persons. It is very significant that the same legislature that by chapter 39 of the Laws of 1914 gave the right of review before a jury to an alleged epileptic committed in a judicial proceeding, omitted to give any such review to feeble-minded persons so committed to an institution pursuant to chapter 361 of the Laws of 1914. It is, therefore, evident that no such review was intended to be given in such cases, and the legislature is undoubtedly awaiting the test of time and experience to determine whether in dealing with cases of this character it is either wise or necessary to grant the right of appeal or of a rehearing before a jury in order to prevent any injustice being done.

Misc.] Supreme Court, January, 1919.

There was no apparent error in the conduct of the trial, and I find no authority for permitting a rehearing before a jury, as a matter of right. The alleged feeble-minded person seems to have had her fair day in court in a legal and orderly proceeding, her rights have not been violated, and the petition is therefore denied.

Petition denied.